## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TRI-STATE FLOORS, INC.,      )
      )
      **Plaintiff,**      )
      )
      **vs.**      )      **Case No. 19-CV-707-JFH-JFJ**
      )
OLD RULE SERVICES, LLC, an      )
Oklahoma limited liability company;      )
CHAD BUNNELL, individually; and      )
JAMES R. BUNNELL, individually,      )
      )
      **Defendants.**      )

## OPINION AND ORDER

Before the Court is Defendant James R. Bunnell's Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 44. The parties have consented to disposition of this motion by a magistrate judge. ECF No. 97.[1] For the reasons stated below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Allegations in Complaint

Plaintiff Tri-State Floors, Inc. ("Tri-State") filed this action to recover against the defendants for alleged violations of the federal Defend Trade Secrets Act of 2016 ("DTSA"), the Federal Computer Fraud and Abuse Act ("CFAA"), and the Oklahoma Uniform Trade Secrets Act ("OUTSA"). Tri-State also asserts common law causes of action for tortious interference with business relations, tortious interference with contract, breach of fiduciary duty, fraud/false representation/deceit, fraud/nondisclosure/concealment, civil conspiracy, conversion, unjust enrichment, and injunctive relief. Am. Compl. (ECF No. 31). The Amended Complaint names as

---

[1] When the parties consented to magistrate judge disposition of this motion to dismiss, they also consented to magistrate judge disposition of three pending motions for summary judgment. The Court rules on all pending motions this date. The Court enters separate orders to delineate what, if any, claims are dismissed based on the pleadings versus the evidence.

defendants James R. Bunnell ("Jim"), Chad Bunnell ("Chad"), Old Rule Services, LLC ("Old Rule"), Rowdy Merritt ("Merritt"), and Legends Hardwoods LLC ("Legends"). Merritt and Legends have since been dismissed from this case. *See* ECF No. 78.

Tri-State is in the business of selling and installing high-quality flooring, including specialty and sports flooring. Am. Compl. ¶ 10. Tri-State also provides related services such as annual recoating. *Id.* Tri-State purchases supplies from interstate suppliers and sells those products and services to customers located in multiple states, including Oklahoma and Arkansas. *Id.* At all relevant times, Jim and Chad were employees of Tri-State. *Id.* ¶ 11. Jim was Tri-State's President, responsible for overseeing sales and operations and for performing project management. *Id.* Chad, Jim's son, was Tri-State's Operations Manager. *Id.* Jim and Chad were privy to confidential information and trade secrets belonging exclusively to Tri-State, including lists of prospective and current customers, bids and estimates for projects, customer accounts, customer communications, lists of vendors, prices, details of customers' products and recoating/maintenance schedules, distributorships, business policies, selling techniques, specifications of products, Tri-State's costs, and other information related to Tri-State's business affairs. *Id.* ¶ 12. Tri-State placed trust and confidence in Jim and Chad, and Tri-State expected them to exhibit loyalty to Tri-State at all times. *Id.* ¶ 13.

In or around October 2014, Chad formed Old Rule, and Chad is the exclusive owner of Old Rule. *Id.* ¶ 14. Jim was aware of Old Rule and Chad's ownership of Old Rule, but neither Chad nor Jim informed Tri-State about Old Rule's existence. *Id.* ¶¶ 15-16. In or around 2016, Tri-State learned of Old Rule's existence and Chad's ownership of Old Rule. *Id.* ¶ 17. Chad and Jim represented that Old Rule did home remodeling work and was not in competition with Tri-State. *Id.* Tri-State informed Jim and Chad that it would be unacceptable for Old Rule to compete with Tri-State for customers or to perform similar work. *Id.* On several subsequent occasions, Tri-

State asked Chad and Jim whether Old Rule was competing with Tri-State in any way, and both represented to Tri-State that Old Rule was not competing for any work or customers. *Id* ¶ 18. At the time of those representations, Chad and Jim knew they were false. *Id.*

As early as November 2014, Old Rule was performing the same services as Tri-State and directly competing with Tri-State for business and customers. *Id.* ¶ 19. In November 2014, Old Rule stole Tri-State's customer Caney Valley Schools. *Id.* Old Rule began soliciting and obtaining recoating business from Tri-State customers by using Jim and Chad's direct knowledge of Tri-State's confidential information and trade secrets. *Id.* ¶ 20. Between 2014 and 2019, Old Rule stole numerous Tri-State customers, including school districts, churches, and recreational centers, with Jim and Chad's knowledge and assistance. *Id.* Jim, Chad, and Old Rule knowingly misrepresented to Tri-State customers that Old Rule was a subsidiary of or affiliated with Tri-State. *Id.* ¶ 21. Jim, Chad, and Old Rule also used Legends and Merritt, a former Tri-State employee, to hide their scheme to steal business and customers from Tri-State. *Id.* ¶ 22. Specifically, Jim and Chad would subcontract some Tri-State work to Legends or Merritt, who would then contract those jobs to Old Rule at the same or nearly the same cost. *Id.*

Additionally, Jim and Chad secretly ordered flooring supplies that were shipped to and received at Tri-State, but paid for and used by Old Rule to compete against Tri-State. *Id.* ¶¶ 25-27. Jim and Chad secretly performed Old Rule work for Tri-State customers during regular business hours while being paid by Tri-State. *Id.* ¶ 29. Jim and Chad also secretly used Tri-State equipment to perform Old Rule work for Tri-State customers, without compensating Tri-State for the value of the use of such equipment. *Id.* ¶ 30. Jim and Chad also worked together to divert current and potential Tri-State customers to Old Rule, including Vinita Public Schools. *Id.* ¶ 31.

Jim and Chad used their positions at Tri-State to steal Tri-State materials for their own personal use or financial gain. *Id.* ¶ 32. Jim was compensated by Old Rule for his part in the

scheme to steal Tri-State customers and work.  *Id.* ¶ 33.  Jim and Chad knowingly and intentionally made false statements to and withheld material information from Tri-State about their activities in stealing and diverting Tri-State customers to Old Rule.  *Id.* ¶¶ 34-35.  When Tri-State learned that Old Rule was competing directly with Tri-State and that Jim was aware of and assisting such activities, Tri-State terminated both Jim and Chad on August 15, 2019.  *Id.* ¶ 36.

Tri-State currently asserts a total of thirteen causes of action against Jim, Chad, and Old Rule.  Relevant to Jim's Motion to Dismiss, Plaintiff seeks recovery against Jim pursuant to: (1) the federal DTSA for misappropriation of trade secrets; (2) the federal CFAA; (3) OUTSA for misappropriation of trade secrets; (4) tortious interference with business relations; (5) tortious interference with contract; (6) breach of fiduciary duty; (7) fraud/false representation/deceit; (8) fraud/nondisclosure/concealment; (9) civil conspiracy; (10) conversion; (11) unjust enrichment; and (12) injunctive relief.  *Id.* ¶¶ 38-76, 82-125.  Tri-State seeks various forms of injunctive relief, actual damages, and exemplary damages.

Jim filed a motion to dismiss Plaintiff's claims against him pursuant to (1) Federal Rule of Civil Procedure 13(a)(1) and Oklahoma's compulsory counterclaim statute, Okla. Stat. tit. 12, § 2013(A); and (2) Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which any relief can be granted as a matter of law, pertaining to all claims against him.

## II.     Tri-State's Claims Are Not Compulsory Counterclaims in Rogers County Action

Jim first argues Tri-State's claims against him are barred, because they are compulsory counterclaims in a pending case Jim filed against Tri-State and other defendants in Rogers County, Oklahoma, in October 2019 (the "Rogers County Action").  *See* ECF No. 55-1 (Petition in Rogers County Case No. CJ-2019-422).  In the Rogers County Action, Jim sued Tri-State, its owners Kirk M. Verseman and Kent R. Verseman (together, "the Versemans"), and two other related companies owned by the Versemans, for claims related to the Versemans' purchase of Tri-State in 2008.  Jim

alleges in the Rogers County Action that the defendants agreed to pay Jim $20,000 immediately for his Tri-State stock and an additional $105,000 over a period of time, while Jim continued working for Tri-State.  The defendants also allegedly agreed to pay for Jim's annual membership in a hunting club pursuant to Jim's employment agreement.  Jim alleges the defendants still owe him most of the outstanding $105,000 plus interest, as well as payment for the hunting club membership.  Jim brings causes of action for deceit, joint venture, false representation, breach of contract, and unjust enrichment.

In determining whether claims in a federal action are subject to dismissal because they are compulsory counterclaims in a pending state court action, a federal court must look to state law. *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1100 (10th Cir. 2007) (citing *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997)).  The federal court looks to state law in this instance, because "the preclusive effect of a state judgment is governed by the rules of that state" pursuant to 28 U.S.C. § 1738 (the Full Faith and Credit statute).  *Id.  See Fox*, 112 F.3d at 456 (explaining that the Full Faith and Credit statute requires a federal court to "ascertain what preclusive effect Oklahoma would give its own decision before we may know what effect it should have been given in the federal court") (cleaned up).

Under Oklahoma's statute, a pleading must "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Okla. Stat. tit. 12, § 2013(A) ("§ 2013(A)").  *See Robinson v. Texhoma Limestone, Inc.*, 100 P.3d 673, 675-77 (Okla. 2004) (discussing compulsory counterclaim rule under Oklahoma law).  Because the text of the Oklahoma compulsory counterclaim rule is substantially identical to that of Federal Rule of Civil Procedure 13(a), Oklahoma courts have looked to federal

law for guidance in applying the Oklahoma statute. *Valley View*, 497 F.3d at 1103 n.10 (collecting cases).[2] "Failure to plead a compulsory counterclaim prevents a party from bringing a later independent action on that claim." *Id.* (quoting *Okla. Gas & Elec. Co. v. Dist. Court, Fifteenth Judicial Dist., Cherokee Cnty.*, 784 P.2d 61, 64 (Okla. 1989)) (cleaned up).

For a counterclaim to be compulsory under § 2013(A), "it must arise out of the 'same transaction and occurrence' as the subject matter of the opposing party's claim." *Valley View*, 497 F.3d at 1103 (quoting *Okla. Gas*, 784 P.2d at 64-65). Instead of attempting to define the terms "transaction" and "occurrence" precisely, most courts prefer to "suggest standards by which the compulsory or permissive nature of specific counterclaims may be determined." *Fox*, 112 F.3d at 457. Such factors include: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiff's claims as well as defendant's counterclaim? and (4) Is there a logical relation between the claim and the counterclaim? *Id.*

In Tri-State's federal case, Tri-State asserts that Jim committed misappropriation of trade secrets, tortious interference with business relations and contract, breach of fiduciary duty, fraud, civil conspiracy, conversion, and unjust enrichment while Jim was employed at Tri-State between 2014 and 2019. The factual basis for these claims is that Jim, along with Chad and Old Rule, diverted Tri-State customers and business away from Tri-State to Old Rule between 2014 and 2019 by using Tri-State's trade secrets, that Jim lied about and failed to disclose the scheme to Tri-State,

---

[2] According to Federal Rule of Civil Procedure 13(a)(1), "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1).

and that Jim sold and used Tri-State's property without permission and did not compensate Tri-State for such sale and use.

Jim's Rogers County Action alleges that Tri-State and its owners did not fully compensate Jim for the purchase of Tri-State in 2008 and failed to fulfill their obligation to pay for Jim's hunting club membership pursuant to Jim's employment agreement.  ECF No. 55-1.  Jim alleges Tri-State and its owners committed breach of contract, deceit, and false representation, and they unjustly enriched themselves by purchasing Tri-State without fully compensating Jim for the purchase.

### A.    Common Issues of Fact and Law

Jim argues that there are similarities in facts, because both cases involve Jim's employment at Tri-State, and the facts include some overlapping time periods of 2014 to 2019.  However, the specific facts and law relevant to Jim's claims against Tri-State will not be the same as Tri-State's claims against Jim.  Jim's Rogers County Action turns on whether Tri-State still owes Jim compensation pursuant to a 2008 sale agreement and employment agreement.  Tri-State's claims against Jim in this federal case turn on whether Jim misappropriated Tri-State's trade secrets and defrauded Tri-State by diverting customers to Old Rule and wrongfully using and converting Tri-State materials between 2014 and 2019.

The issues of law will also be different.  The Rogers County Action alleges breach of contract, fraud, joint venture, and unjust enrichment related to the 2008 sale agreement and employment agreement between Jim and the Versemans.  Tri-State's case involves federal and state misappropriation of trade secrets, fraud, breach of fiduciary duty, interference with contract and business relations, civil conspiracy, conversion, unjust enrichment and injunctive relief related to Jim and Chad's alleged abuse of their positions at Tri-State between 2014 and 2019.  *See* Am.

Compl. ¶¶ 38-125.  The two similar legal claims – fraud and unjust enrichment – are based on entirely different facts and alleged conduct.

### B.     Res Judicata

The Court identifies no relationship between the Rogers County Action and Tri-State's case that would support barring Tri-State's claim under the doctrine of res judicata.  Res judicata, also known as claim preclusion, bars claims that were actually litigated or could have been litigated in the initial case.  *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990).  Res judicata is an affirmative defense on which the defendant bears the burden to prove each of the following four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.  *Nwosun v. General Mill Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997).  Here, there is no indication that Tri-State's claims in this federal action would be a defense in the Rogers County Action or that any part of Tri-State's case would form a defense to Jim's claims.  In its Amended Complaint, Tri-State makes no attempt to relate the 2008 purchase agreement or Jim's 2008 employment agreement to Jim's conduct as a Tri-State employee between 2014 and 2019, and such a relationship is not obvious from the pleadings in either case.  While the two cases may form part of a single narrative involving many of the same parties and players, the outcome of the Rogers County Action will have no bearing on the outcome of Tri-State's federal case, and vice-versa.

### C.     Commonality of Evidence

Based on the pleadings and the parties' arguments, there is no specific evidence in the Rogers County Action that will be common to Tri-State's case.  In his briefs, Jim focuses on discovery in the Rogers County Action concerning Jim's 2008 employment agreement with Tri-State.  However, by its terms, Jim's employment agreement expired in March 2013, prior to the

relevant conduct alleged in Tri-State's Amended Complaint.  *See* ECF No. 55-1 at 27 (stating that the terms of Jim's 2008 employment agreement "shall be for a term beginning as of March 1, 2008 and terminating five (5) years thereafter"); Am. Compl. ¶ 20 (alleging that, "[f]rom 2014 through 2019, Old Rule, with James and Chad's knowledge and assistance, stole numerous TSF customers such as school districts, churches and recreational centers").  While Jim's employment agreement appears relevant to the Rogers County Action in regard to Jim's compensation between 2008 and 2013, it bears no relationship to the events of Tri-State's federal case.  Tri-State does not allege Jim's employment agreement remained valid during the events relevant to its federal lawsuit, and Jim fails to point to any such possible relationship between his employment agreement and Tri-State's allegations against him.

### D.    Logical Relationship of Claim and Counterclaim

There is no logical relationship between the terms of Jim's 2008 sale of Tri-State to the Versemans and Jim's alleged abuse of his position at Tri-State by diverting customers to Old Rule and stealing Tri-State materials between 2014 and 2019.  There are no allegations in either Jim's Petition in the Rogers County Action or Tri-State's Amended Complaint to indicate Jim's alleged conduct in diverting customers to Old Rule beginning in 2014 formed "part of an overall pattern of wrongful conduct" related to Tri-State's alleged failure to fully compensate Jim for purchasing Tri-State in 2008.  *See Fox*, 112 F.3d at 457.

Jim argues that Tri-State's case is analogous to the situation in *Fox v. Maulding*, contending the pertinent events arise out of the same employer-employee relationship and form an overall pattern of conduct.  In *Fox*, the Tenth Circuit concluded the plaintiffs' federal RICO and pendent fraud claims against the defendant bank were compulsory counterclaims in the bank's previous state court foreclosure action, even though the federal case involved loans that were not at issue in foreclosure action.  The court reached this conclusion because (1) both cases arose out of the same

debtor-creditor relationship, (2) plaintiffs in the federal case had alleged that the bank's fraudulent activities were part of an "overall pattern of wrongful conduct" and that their default on the loans resulted from such conduct, and (3) claims in the federal case may have been a complete defense to the foreclosure action. *Id.* at 457-58. However, unlike in *Fox*, it is not clear that Tri-State's case against Jim would reveal any "overall pattern" of conduct when addressed as part of the Rogers County Action, or that Jim's rights in the Rogers County Action would be impaired if Tri-State were to successfully prosecute its claims against Jim. *Fox* is not factually analogous to the situation here.

*Valley View* is more instructive on this issue. 497 F.3d at 1103-05. In that case, defendant Duke had filed suit in state court seeking to enter plaintiff Valley View's property to install monitoring wells following a gas pipeline leak. *Id.* at 1099. Valley View then filed a federal action against Duke seeking damages based on the gas line leak. *Id.* After obtaining a favorable judgment in state court, Duke sought summary judgment in federal court, contending in part that Valley View's federal claims were barred as compulsory counterclaims in the state court case. *Id.* at 1099-1100. Applying the four factors articulated in *Fox*, the district court found that Valley View's federal claims were not compulsory counterclaims. *Id.* at 1104. The court found "*some* logical relation" between the state claim and purported counterclaims, because Duke had alleged in the state case that it had attempted entry onto Valley View's property for the purpose of determining whether there was a gas leak, and Valley View's claims in the federal case were based on the alleged gas leak. *Id.* Nonetheless, the district court found the logical connection to be "attenuated," and it found the other three factors weighed against finding Valley View's claims were compulsory counterclaims. *Id.* The Tenth Circuit agreed with this conclusion, stating that the "only logical connection" between the parties' claims was that they concerned events – namely, the alleged damages caused by the pipeline leak and the subsequent denial of access to the pipeline

to fix that leak – occurring at the same place, albeit at different times.  *Id.* at 1105.  The Tenth Circuit found this nexus to be "too attenuated," and found Valley View's trespass and nuisance claims were not properly categorized as compulsory counterclaims.  *Id.*

Here, the claims in the state and federal cases are even more attenuated than in *Valley View*. The only logical connection between Jim's state claims and Tri-State's federal claims is that they occurred as part of the same business relationship between Tri-State and Jim.  The relevant events occurred at different times and concern events of completely different natures.  All four *Fox* factors weigh against a finding that Tri-State's claims should have been raised as compulsory counterclaims in the Rogers County Action.  Accordingly, as in *Valley View*, Tri-State's claims are not properly categorized as compulsory counterclaims in the Rogers County Action and are therefore not subject to dismissal in this federal action.

## III.  Tri-State Has Adequately Stated Claims for Relief, Except Federal Computer Fraud Claim

Next, Jim moves to dismiss each of Tri-State's twelve claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In addition, should the Court dismiss Tri-State's two federal claims against him, Jim seeks dismissal of any remaining state law claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff.  *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008).  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has stated that "plausibility" in this context refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 569).  The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 550 U.S. at 556.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## A.    Federal Misappropriation of Trade Secrets

Jim argues Tri-State's allegations under its first cause of action are insufficient to state a claim.  Under the DTSA, an "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  *See Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *4 (W.D. Okla. Dec. 8, 2017) (discussing elements of DTSA claim).

The DTSA defines several terms relevant to raising a misappropriation claim.  In general, a "trade secret" is certain information that (1) is subject to reasonable measures of secrecy taken by its owners, and (2) derives independent economic value from not being generally known or readily ascertainable through proper means.  *See* 18 U.S.C. § 1839(3).[3]  "Misappropriation" includes both (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," and (2) "disclosure or use of a trade

---

[3] The DTSA provides categories of information that may meet such criteria: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing."  18 U.S.C. § 1839(3).

secret of another without express or implied consent by a person who" acquired the trade secret under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret. 18 U.S.C. § 1839(5). "Improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." 18 U.S.C. § 1839(6). *See ATS Group, LLC v. Legacy Tank & Indus. Servs., LLC*, 407 F. Supp. 3d 1186, 1197 (W.D. Okla. 2019) (explaining that a plaintiff alleging violation of the DTSA "must allege that it lawfully owned information of independent economic value that it took reasonable measures to keep secret, and that the defendant under consideration either acquired, disclosed, or used, improperly") (citing 18 U.S.C. § 1839) (DTSA definitions).

Jim argues the DTSA claim fails for three reasons. First, Jim contends the Amended Complaint does not assert facts of intentional "misappropriation" by Jim. The Court rejects this argument. The Amended Complaint alleges that Tri-State owned trade secrets in the form of "lists of prospective and current customers, bids and estimates for projects, customer accounts, customer communications, lists of vendors, prices, details of customers' products and recoating/maintenance schedules, distributorships, business policies, selling techniques, specifications of products, [Tri-State's] costs, and other information related to [Tri-State's] business affairs." Am. Compl. ¶ 12. Tri-State alleges that Jim was privy to such trade secret information, and that Jim knowingly accepted Tri-State's trust and confidence. *Id.* ¶¶ 12-13. Tri-State alleges that, beginning in 2014, Jim and Chad began soliciting and obtaining recoating business from Tri-State customers by using Jim's and Chad's direct knowledge of Tri-State's trade secrets. *Id.* ¶ 20. As an example, Tri-State alleges that in July 2019, Jim and Chad set up a meeting with Vinita Public Schools about a potential flooring project purportedly on behalf of Tri-State. *Id.* ¶ 31. Despite this meeting, Tri-State never submitted a quote or bid for the work, but Chad's company Old Rule submitted a $23,200 quote for the work to Vinita Public Schools. *Id.* In other

words, Jim misappropriated Tri-State's trade secrets by using information regarding pricing, selling techniques, and costs for Vinita Public Schools to enable Chad and Old Rule to submit a bid for the same project without Tri-State's knowledge or consent.  Tri-State has adequately alleged that Jim was privy to and disclosed Tri-State's trade secrets under circumstances giving rise to Jim's duty to maintain the secrecy of those trade secrets or to limit the use of those trade secrets.    18  U.S.C.  §  1839(5)(B).    These  facts  adequately  allege  Jim's  intentional "misappropriation" as defined in the DTSA.

Second, Jim argues the Amended Complaint does not assert facts showing that the trade secrets at issue were taken by "improper means."  The Court also rejects this argument.  The term "improper means" is defined in the DTSA to include breach or inducement of a breach of a duty to maintain secrecy.  18 U.S.C. § 1839(6).  As explained above, Tri-State has adequately alleged that Jim had a duty to maintain secrecy of Tri-State's trade secrets and that Jim breached that duty by using Tri-State's trade secrets in a scheme to steal customers from Tri-State, including Vinita Public Schools.  Am. Compl. ¶¶ 12-13, 20, 31.

Finally, Jim contends the Amended Complaint does not state how an action by Jim resulted in the "economic benefit of anyone other than the owner."  *See* 18 U.S.C. § 1832(a) (stating elements of criminal theft of trade secrets under DTSA).  For this element, Jim cites the DTSA provision regarding criminal theft of trade secrets, 18 U.S.C. § 1832(a).  *See* ECF No. 44 at 12.  The Court is not persuaded that this element forms any part of a civil claim for misappropriation of trade secrets.

Even if such an element were required in this case, Tri-State makes sufficient allegations in this regard.  Specifically, Tri-State alleges that Jim "shared in the profits of Old Rule's scheme of stealing [Tri-State's] customers and work," and that Jim received a share of Old Rule's profits from its recoating business at least as early as December 2017.  Am. Compl. ¶ 33.  Tri-State alleges

such profits were obtained as a result of Jim and Chad's improper use of Tri-State's confidential information and trade secrets while employed at Tri-State. *Id.* These allegations would sufficiently put Jim on notice of the facts alleged against him regarding any economic benefit he wrongfully obtained and the means through which he obtained such benefit.[4]

### B.      Oklahoma Misappropriation of Trade Secrets

Jim argues Tri-State fails to state a viable claim for relief pursuant to OUTSA.  OUTSA "establishes a greater burden [than federal law] to plead a trade secrets misappropriation claim." *Blue Star*, 2017 WL 6210901, at *7.  In addition to showing the elements of a federal DTSA claim, the plaintiff must additionally show use of the trade secret to the plaintiff's detriment in order to state an OUTSA claim. *Id.*

As explained above, Tri-State has adequately stated a DTSA claim.  In addition, Tri-State alleges Jim used Tri-State's trade secrets to assist Chad and Old Rule in soliciting and obtaining recoating business from Tri-State customers. Am. Compl. ¶¶ 20, 31.  Tri-State alleges specifically that Jim and Chad met with a Vinita Public Schools representative about a potential flooring project on behalf of Tri-State, but then Tri-State never submitted a bid. *Id.* ¶ 31.  Instead, shortly after the meeting, Old Rule submitted a $23,200 quote for the work to Vinita Public Schools. *Id.* This example adequately alleges that Tri-State suffered a detriment as a result of Jim's alleged misappropriation of Tri-State's trade secrets.  Tri-State further alleges that Tri-State believes it has been damaged in excess of $300,000 as a result of Jim and Chad's misappropriation of Tri-State's trade secrets. *Id.* ¶ 56.  Accordingly, Tri-State adequately states a claim for violation of OUTSA.

---

[4] Jim argues that, if the federal claims against him are dismissed, then the Court should dismiss the remaining state law claims against him pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Because the Court finds that Tri-State's federal DTSA claim remains, the Court rejects this argument.

### C.  Federal Computer Fraud

Jim contends Tri-State's claim for federal computer fraud fails, because Tri-State fails to allege any facts sufficient to raise a civil claim against him.  *See* 18 U.S.C. § 1030.  Although the federal CFAA primarily provides criminal penalties, it also provides a civil remedy to those who suffer damage or loss from violations of the Act.  *See* 18 U.S.C. § 1030(g).  Tri-State argues it states a claim under 18 U.S.C. § 1030(a)(2), based on Jim's exceeding his authorized access to Tri-State computers by using Tri-State's electronic information to assist Old Rule in stealing Tri-State business and customers.  *See* ECF No. 55 at 15-16.

To allege a civil CFAA claim under § 1030(a)(2), Tri-State must allege that Jim "(1) intentionally 'accessed' a computer, (2) lacked authorization or exceeded his authorized access to the computer, (3) obtained information from the computer, and (4) caused a loss of at least $5,000 to [plaintiff]."  *Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010) (discussing 18 U.S.C. § 1030(a)(2)(C)).  Here, Tri-State alleges Jim "exceeded his authorized access" by using Tri-State's computers in a way that was not authorized – *i.e.*, by using Tri-State's computers to steal Tri-State customers and divert them to Old Rule.  Am. Compl. ¶¶ 28, 105-110.

The phrase "exceeds authorized access" is defined in the CFAA to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  Until recently, there was a split among circuit courts as to the scope of the meaning of this phrase.  *See Clarity Servs.*, 698 F. Supp. 2d at 1314-1316 & n.3 (discussing circuit split).  Recently, however, the United States Supreme Court resolved the split in *Van Buren v. United States*, 141 S. Ct. 1648 (2021).  In *Van Buren*, the Supreme Court held that the phrase "exceeds authorized access" equates with the act of entering a part of the system to which a computer user lacks access privileges.  *Id.* at 1657-58.

The CFAA therefore excludes those who have permission to access computer information but do so with improper motives. *Id.* at 1652.

Here, Jim is alleged to have violated the CFAA by accessing Tri-State computers and protected information to aid his soliciting and diverting Tri-State business to Chad and Old Rule. *See* Am. Compl. ¶¶ 106-110.   Tri-State admits that Jim was authorized to access Tri-State's computers and the protected information contained on Tri-State's servers, but it alleges Jim abused his access by using the protected information to defraud Tri-State and steal its customers. *Id.* According to now-settled precedent under *Van Buren*, Jim's alleged acts cannot violate the CFAA. Accordingly, Jim's motion to dismiss the tenth cause of action for violation of the CFAA is granted.

### D.    Tortious Interference with Business Relations/Prospective Economic Advantage

Tortious interference with business relations/prospective economic advantage requires proof of: (1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted.  *See Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 424 (Okla. 2019); *Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006).  The third element requiring "intentional interference" is synonymous with "malicious interference," and requires a showing of an "unreasonable and wrongful act done intentionally, without just cause or excuse." *Loven*, 452 P.2d at 425-26 (clarifying that all variations of tortious interference, including interference with prospective economic advantage, require a showing of malice and bad faith). *See also* Okla. Jury Instr. No. 24.2 (Civil) (setting forth elements of claim for tortious interference with prospective economic advantage).

Jim argues that Tri-State has not alleged an interference by Jim, or malice or bad faith by Jim.  The Court rejects Jim's arguments.  Tri-State alleges Jim intentionally interfered with Tri-State's business relations by referring existing and potential Tri-State customers to Chad and Old Rule, so that Old Rule would obtain the business instead of Tri-State.  Am. Compl. ¶¶ 20, 31.  Tri-State provides the example of Vinita Public Schools as part of its allegations that Jim diverted business from Tri-State to Old Rule.  *Id.* ¶ 31.  Tri-State alleges that Jim set up and attended a meeting with Vinita Public Schools regarding a potential flooring project, but Tri-State never submitted a bid.  *Id.*  Instead, Old Rule submitted a quote for the work to Vinita Public Schools. *Id.*  Tri-State further alleges that Jim never disclosed these facts to Tri-State, and repeatedly falsely represented that Old Rule was not competing with Tri-State for customers.  *Id.* ¶¶ 18, 31, 34.  These facts sufficiently allege that Jim interfered with Tri-State's business; that he did so intentionally and in bad faith; and that Tri-State was damaged as a result of Jim's interference with Tri-State's business.

Jim additionally argues Tri-State's allegation that Jim shared in Old Rule's profits as part of his interference scheme is "entirely baseless."  ECF No. 44 at 17.  However, on a motion to dismiss, the Court must take Tri-State's well-pleaded allegations as true.  Jim's request to dismiss this cause of action is denied.

### E.  Tortious Interference with Contract

Tortious interference with contract requires proof of: (1) interference with a contractual right; (2) malice or wrongful interference that is neither justified, privileged, nor excusable; and (3) damages proximately sustained as a result.  *Loven*, 452 P.3d at 424.  *See also* Okla. Jury Instr. No. 24.1 (Civil) (setting forth elements of claim for tortious interference with contract).  Interference with an existing contract generally occurs in two ways: (1) the defendant directs conduct at a third party "which induces the third party to breach its contract with the plaintiff"; or

(2) the defendant directs conduct at the plaintiff "which hinders plaintiff's own performance or renders plaintiff's performance more burdensome or costly." *Wilspec Techs., Inc. v. DunAn Holding Grp., Co.*, 204 P.3d 69, 71 (Okla. 2009) (explaining variations of tortious interference with contract in relation to the corresponding sections of the Restatement (Second) of Torts – namely, §§ 766 and 766A).[5]

Jim argues Tri-State's Amended Complaint fails to show that he interfered with a contract or acted with malice. The Court rejects Jim's arguments. Tri-State alleges that Jim and Chad subcontracted some Tri-State jobs to Merritt and/or Legends, who then subcontracted the same jobs to Old Rule at the same or nearly the same cost. Am. Compl. ¶ 22. Tri-State provides examples of this scheme involving Salina Public Schools and Broken Arrow Public Schools. *Id.* In this way, Tri-State unwittingly paid Old Rule for completing Tri-State jobs. Construing these allegations in a light favorable to Tri-State, the Court finds it plausible that this scheme interfered with Tri-State's contractual right to have an approved subcontractor complete the job. Tri-State alleges that Jim was involved in his scheme, and that he knew it was unacceptable for Old Rule to perform work similar to Tri-State's flooring work. *Id.* ¶ 17, 22. Tri-State sufficiently alleges the elements of this claim.

### F. Breach of Fiduciary Duty

A claimant raising a breach of fiduciary duty claim must allege facts to support four elements: (1) a fiduciary relationship; (2) a duty arising out of the fiduciary relationship; (3) a breach of that duty; and (4) damages proximately caused by that breach. *FDIC v. Grant*, 8 F.

---

[5] *Wilspec* also recognized that interference can occur with prospective contractual relations not yet reduced to writing. *Id.* (explaining this third variation in relation to the corresponding section of the Restatement (Second) of Torts – namely, § 766B). *See also* Okla. Jury Instr. No. 24.2 (Civil).

Supp. 2d 1275, 1299 (N.D. Okla. 1998).  Jim argues Tri-State's allegations pertaining to this claim are too conclusory and speculative to pass muster under Rule 12(b)(6).

The Court rejects this argument and finds this claim is sufficiently pleaded.  To state its breach of fiduciary duty claim, Tri-State alleges that Jim was President of Tri-State.  Am. Compl. ¶ 11.  As President, Jim "occupied a special position of trust and confidence with respect to [Tri-State's] business affairs, and as a result, [Jim] owed duties of loyalty, care, and good faith to [Tri-State]."  *Id.* ¶ 73.  Tri-State alleges Jim breached his duties of loyalty and care to Tri-State by misappropriating confidential information and trade secrets, by failing to disclose Old Rule's competition with Tri-State, by assisting Chad and Old Rule in soliciting and redirecting Tri-State customers to Old Rule, by stealing Tri-State materials, and by using Tri-State's confidential information to Tri-State's detriment and for his personal gain.  *Id.* ¶ 74.

As a factual basis for those claims, Tri-State alleges that Jim and/or Chad ordered recoating supplies in 2019, ostensibly on behalf of Tri-State, but paid for and obtained by Old Rule to compete against Tri-State.  *Id.* ¶¶ 25-27.  Tri-State further alleges Jim and Chad met with Vinita Public Schools in 2019 on behalf of Tri-State, but Tri-State never submitted a bid for the proposed flooring work.  *Id.* ¶ 31.  Instead, Old Rule submitted a quote for $23,200 for that flooring work to Vinita Public Schools.  *Id.*  Tri-State alleges that Jim and Chad sold Tri-State materials to third parties and retained the profits in 2019, and that Jim shared in Old Rule's profits for his participation in Old Rule's scheme of stealing Tri-State customers and work.  *Id.* ¶¶ 32-33.

Tri-State further alleges Jim never informed Tri-State that Old Rule was in competition with Tri-State, was soliciting and performing work for Tri-State customers, was falsely informing Tri-State customers that Old Rule was a Tri-State subsidiary or affiliated company, and was using Merritt and Legends to redirect Tri-State work to Old Rule.  *Id.* ¶ 34.  Instead, Jim falsely represented to and withheld information from Tri-State regarding his own and Chad's scheme of

stealing and redirecting customers to Old Rule. *Id.* Tri-State's allegations are specific and supported by facts sufficient to state a plausible claim for breach of fiduciary duty.

### G.    Fraud Claims – False Representation/Deceit and Nondisclosure/Concealment

The tort of fraud or deceit involves five elements: (1) "a false representation of fact made by the defendant"; (2) "knowledge or belief of the defendant that the representation was false (often called scienter)"; (3) "an intention to induce the defendant to act or to refrain from acting in reliance"; (4) "justifiable reliance by plaintiff upon the representation in taking action or in refraining from it"; and (5) "damage suffered by the plaintiff." *Tenneco Oil Co. v. Joiner*, 696 F.2d 768, 773 (10th Cir. 1982) (cleaned up). Fraud may also be founded on "[t]he suppression of that which is true, by one having knowledge or belief of the fact." Okla. Stat. tit. 15 § 58(3).

Under Federal Rule of Civil Procedure 9(b), fraudulent conduct must be pleaded with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (stating that, under the particularity requirement of Rule 9(b), "a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof") (cleaned up).

Jim contends Tri-State fails to allege any false representations made by Jim regarding Old Rule, and Tri-State fails to allege that it relied on any such false representation. However, the Amended Complaint alleges several specific instances of false representations by Jim. First, Tri-State alleges Jim represented to Tri-State in 2016 that Old Rule only did home remodeling work and was not in competition with Tri-State for business or customers. Am. Compl. ¶ 17. Tri-State informed Jim that it would be inappropriate and unacceptable for Old Rule to perform similar work to that of Tri-State or to compete with Tri-State. *Id.* Tri-State alleges Jim knew his representations to Tri-State about Old Rule were false at the time they were made. *Id.* ¶ 18. Tri-State alleges Old

Rule began competing for Tri-State's business and customers in 2014, and Old Rule began soliciting and obtaining recoating business from Tri-State customers with Jim's knowledge and assistance between 2014 and 2019. *Id.* ¶¶ 19-20. Tri-State also alleges Jim falsely told Tri-State customers that Old Rule was a subsidiary of or affiliated with Tri-State, even though Jim knew the representation was false when made. *Id.* ¶ 21.

Second, Tri-State alleges Jim used Tri-State's facilities and supplier accounts to order and receive recoating materials that Old Rule used in direct competition with Tri-State. *Id.* ¶ 25. Jim allegedly signed for one of the orders, and an Old Rule credit card was used to pay for the materials. *Id.* Jim denied that the order had been placed and blamed it on a clerical error by the supplier. *Id.* ¶ 25. While this practice continued, Jim failed to inform Tri-State that he and Chad were using Tri-State's accounts and facilities to purchase and receive supplies on behalf of Old Rule to compete against Tri-State. *Id.* ¶¶ 26-27.

Third, Tri-State alleges Jim performed work on behalf of Old Rule during regular Tri-State business hours, and he used Tri-State equipment to perform Old Rule work for Tri-State customers without compensating Tri-State for the use of such equipment or disclosing such facts to Tri-State. *Id.* ¶¶ 29-30. Fourth, Tri-State alleges Jim permitted Merritt and Legends to redirect subcontracting work to Old Rule, providing specific invoice dates and examples for Tri-State customers Salina Public Schools and Broken Arrow Public Schools. *Id.* ¶ 22. Jim allegedly failed to disclose these facts to Tri-State. *Id.* ¶¶ 24. These allegations are sufficiently specific to allege both the false representation/deceit and nondisclosure/concealment claims for fraud against Jim.

Jim further argues the Amended Complaint does not show an excess of funds to Jim, or additional benefit to Jim, based on the acts of Old Rule or Legends. ECF No. 44 at 21. However, a claim for fraud need not demonstrate personal financial benefit to the defendant, only damage suffered by the plaintiff as a result of the plaintiff's reliance on the defendant's misrepresentation.

*See Tenneco Oil*, 696 F.2d at 773.  Here, Tri-State alleges damages in excess of $300,000 as a result of Jim and Chad's false representations and/or nondisclosure and concealment of material facts.  Am. Compl. ¶¶ 87, 95.  In addition, Tri-State alleges that Jim did, in fact, profit from his involvement in Old Rule's scheme by sharing in Old Rule's profits from its recoating business. *Id.* ¶ 33.  Accordingly, the claims for fraud are adequately pleaded.

### H.    Civil Conspiracy

"A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means."  *AKC ex rel. Carroll v. Lawton Indep. Sch. Dist. No. 8*, 9 F. Supp. 3d 1240, 1244 (W.D. Okla. 2014) (quoting *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 148 (Okla. 1998)) (cleaned up).  A plaintiff pleading civil conspiracy "must allege specific facts showing an agreement and concerted action amongst the defendants, and the manner in which the conspiracy operated."  *Id.* (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004)) (cleaned up).  This cause of action does not create liability, but rather enlarges the pool of potential defendants from whom a plaintiff may recover.  *Earles v. Cleveland*, No. CIV-17-1186-M, 2018 WL 5020025, at *3 (W.D. Okla. Oct. 16, 2018) (citing *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997)).

Jim contends Tri-State inadequately pleads a claim for civil conspiracy against him, because Tri-State fails to explain specifically any unlawful activity or means used by Jim in the alleged conspiracy.  The Court rejects this argument.  The Amended Complaint alleges Jim "redirect[ed] numerous [Tri-State] customers to Old Rule by having [Tri-State] subcontract [Tri-State] [projects] to Merritt and/or Legends under an agreement that Merritt and/or Legends would then subcontract those same projects to Old Rule at the same or nearly the same price."  Am. Compl. ¶ 99.  Tri-State alleges that, through this agreement, Jim and the co-conspirators were engaging in one or more unlawful acts, including misappropriation of trade secrets, tortious

interference with business relations and contract, and fraud.  *Id.* ¶ 100.  Tri-State further alleges Jim and Chad conspired to misappropriate trade secrets when they met with Vinita Public Schools in July 2019 on behalf of Tri-State regarding a proposed flooring project, but then Jim and Chad did not submit a bid on behalf of Tri-State.  *Id.* ¶ 31.  Instead, Old Rule submitted a quote for the work to Vinita Public Schools, and neither Jim nor Chad disclosed these facts to Tri-State.  *Id.* These allegations are sufficiently specific to state a claim for civil conspiracy.

Jim further argues Tri-State's conspiracy claim is "confusing," because it is unclear how and why Jim would gain anything by his involvement in the scheme, or that Jim would be able to control the actions of Merritt, Legends, Chad, or Old Rule.  This argument ignores the father/son relationship between Jim and Old Rule's owner.  Further, on a motion to dismiss, the Court must take Tri-State's well-pleaded allegations as true, and the Court must construe such allegations in the light most favorable to Tri-State.  Even if there are alternative ways of viewing the alleged conspiracy, the Court accepts Tri-State's factual allegations regarding the scheme to divert Tri-State customers to Old Rule by, at times, using Merritt and Legends as conduits.

Jim additionally attempts to analogize Tri-State's allegations to those made in *Earles v. Cleveland*.  *See* 2018 WL 5020025, at *3.  In *Earles*, the court dismissed a civil conspiracy claim, where the plaintiff had alleged that certain defendants "conspired to deprive her of the benefits of her employment agreement," yet she had failed to allege "how defendants did this, nor [did] she specify any unlawful activity or means used in this conspiracy."  *Id.*  In this case, however, Tri-State has sufficiently alleged how the defendants carried out their scheme to divert Tri-State customers to Old Rule using unlawful means, including misappropriation of trade secrets, breach of duty of loyalty, and tortious interference with business relations and contract.  The Court finds the present situation to be unlike the situation in *Earles* and finds Tri-State's civil conspiracy claim to be adequately alleged.

I.    **Conversion**

Under Oklahoma law, the elements of civil conversion are: "(1) that the plaintiff owns certain property at the time of its conversion; (2) that defendant converted plaintiff's property by a wrongful act of disposition of the property; and (3) that damages are suffered by the plaintiff." *U.S. v. Lowrance*, No. 00-CV-236-K(M), 2003 WL 22327850, at *2 (N.D. Okla. Aug. 28, 2003) (cleaned up).

The Amended Complaint specifically alleges that Jim and Chad sold leftover Tri-State materials to a third party in 2019, without Tri-State's permission, and Jim and Chad did not give the money from the sale to Tri-State.  Am. Compl. ¶¶ 32, 112-114.  Tri-State alleges the money from the sale of those materials was not deposited in any Tri-State account, and a subsequent Tri-State inventory search revealed the materials are missing.  *Id.* ¶ 32.  Tri-State alleges that damages resulting from Jim and Chad's various acts of conversion exceed $35,000.  *Id.* ¶ 115.

Jim denies that these allegations are true, and he questions the details of the allegations, arguing they are "entirely disconnected from reality."  ECF No. 44 at 23.  However, for purposes of Jim's motion to dismiss, the Court takes the allegations as true that Jim sold Tri-State materials to a third party without permission, and that he did not give the profits to Tri-State, which caused Tri-State financial damage.  Tri-State has sufficiently pleaded the elements of this claim.

J.    **Unjust Enrichment**

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Quarles v. Little River Energy Co.*, No. 00-CV-913-GKF-PJC, 2008 WL 185715, at *1 (N.D. Okla. Jan 18, 2008) (citing *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2001)).  A claim for unjust enrichment requires: (1) an enrichment to the adverse party; (2) an impoverishment to the claimant;

(3) connection between the enrichment and the impoverishment; (4) an absence of justification; and (5) an absence of remedies at law. *Id.* at *1-2. "Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment." *Id.* at *2 (citing *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006)).

Tri-State alleges Jim was enriched at Tri-State's expense, by misappropriating Tri-State's trade secrets and confidential information and sharing the information with Old Rule.  Am. Compl. ¶¶ 118-120.  Jim argues this claim fails as a matter of law, because any of Tri-State's other claims would provide Tri-State an adequate remedy at law as counterclaims in Jim's Rogers County Action.  However, as explained above, the Court finds Tri-State's claims are not compulsory counterclaims in the Rogers County Action.  The unjust enrichment claim may remain in the case as alternative pleadings, while Tri-State attempts to prove its claims.  *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) (permitting alternative pleading of unjust enrichment under Oklahoma law, so long as plaintiff does not obtain double recovery for the same injuries).

Jim further disputes that the alleged acts ever occurred, and he argues that Tri-State's allegations regarding this claim are nothing more than "naked assertions devoid of further factual enhancement."  ECF No. 44 at 24-25 (citing *Iqbal*, 556 U.S. at 678).  However, the Court deems Tri-State's well-pleaded allegations as true for purposes of this motion.  The Court further rejects Jim's argument that Tri-State's allegations are nothing more than "naked assertions."  Tri-State has adequately detailed the alleged scheme involving Jim and Chad's soliciting and obtaining flooring business from Tri-State, without Tri-State's knowledge and to Tri-State's financial detriment.  *See* Am. Compl. ¶¶ 19-22, 31.  Accordingly, the claim for unjust enrichment is adequately pleaded.

### K.    Injunctive Relief

Finally, Jim requests in a footnote that this claim be dismissed against him, because Jim has "created zero harm to Tri-State."  ECF No. 44 at 25 n.7.  Jim's argument goes to the merits of Tri-State's claims against him, which is not an appropriate consideration on a motion to dismiss.

Jim further argues this claim is unnecessary and could be adequately brought in the Rogers County Action.  *Id.*  As explained above, the Court finds Tri-State's claims are not compulsory counterclaims in the Rogers County Action.  Jim offers no grounds for dismissal of the injunctive relief claim, and the Court denies Jim's request to dismiss this claim.

## IV.    Conclusion

For the reasons detailed above, Defendant James R. Bunnell's Motion to Dismiss (ECF No. 44) is **GRANTED** as to Tri-State's tenth cause of action and **DENIED** as to all other causes of action.  The tenth cause of action (Federal Computer Fraud and Abuse Act – 18 U.S.C. § 1030) is **DISMISSED** as to Jim.

**SO ORDERED** this 30th day of September, 2022.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**